J-S03045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JIHAAD AMORE HARRISON :
:
Appellant : No. 728 WDA 2021

Appeal from the PCRA Order Entered June 8, 2021
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0000107-2019

BEFORE:  LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED: FEBRUARY 28, 2022**

Jihaad Amore Harrison (Harrison) appeals from the June 8, 2021 order[1]
of the Court of Common Pleas of Mercer County (PCRA court) denying his
petition pursuant to the Post-Conviction Relief Act (PCRA).[2]  We affirm.

**I.**

We glean the following facts from the certified record.  On December
16, 2019, Harrison pled guilty to rape, aggravated assault, strangulation,
kidnapping, robbery and three counts of involuntary deviate sexual

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The PCRA court orally denied the petition on the record at the conclusion of
the evidentiary hearing on June 4, 2021.  The written order denying the
petition was docketed on June 8, 2021.

[2] 42 Pa.C.S. §§ 9541 *et seq*.

intercourse (IDSI) in exchange for a sentence of 20 to 50 years' incarceration.[3] In addition, the Commonwealth *nolle prossed* another case pending against Harrison and agreed not to file charges related to "recent conduct in the Mercer County Jail involving drugs." **See** Order, 12/16/19, at 2. He agreed to pay restitution in the instant case and to be joint and severally liable for restitution with his alleged co-defendant in the withdrawn case. The Commonwealth did not pursue a mandatory minimum sentence pursuant to the Habitual Offender Statute, 42 Pa.C.S. § 9714.

At his plea hearing, the trial court asked Harrison whether he had viewed a video at the jail prior to the hearing that explained his plea rights. Harrison testified that he had seen the video, understood his rights and did not have any questions. He confirmed that he had discussed the matter with his attorney and understood the consequences of pleading guilty. He said that he was taking medication to treat mental health conditions but they did not impair his ability to understand the proceedings. He said he had not taken his morning medications but that he fully understood the proceedings. He understood that because he was on state parole, his sentence would be served consecutively to any sentence in that case.

---

[3] 18 Pa.C.S. §§ 3121(a)(2), 2702(a)(1), 2718(a)(1), 2901(a.1)(3), 3701(a)(1)(i) & 3123(a)(2).

Harrison confirmed he understood the terms of the plea. The trial court explained the elements of each of the crimes and Harrison's attorney questioned him about the specific facts of the case. He admitted to raping the 17-year-old victim and causing serious bodily injury to her, strangling her with a cord, committing three acts of IDSI and stealing her cell phone.

Harrison testified that he was satisfied with trial counsel's representation. He confirmed that he had testified truthfully, that no one had told him what to say, threatened him or coerced him, and that he understood the proceedings and wanted to enter his plea. The trial court accepted the plea and sentenced Harrison in accordance with the agreement. The trial court explained his post-sentence and appellate rights on the record prior to imposing the sentence and he did not file a direct appeal.

On September 11, 2020, Harrison filed a timely *pro se* PCRA petition alleging ineffective assistance of trial counsel and that his guilty plea was unlawfully induced.[4] As the factual basis for relief, Harrison wrote that trial counsel had "engage[d] in a fiscal transaction and a mutual exchange of evidence and documentation from [his] personal file and the court[']s file of records." Post-Conviction Relief Act Petition, 9/11/20, at 5. He claimed that

_____

[4] Harrison was first represented by the Mercer County Office of the Public Defender and then by appointed private counsel. Those attorneys withdrew due to conflicts of interest. His ineffectiveness claims relate only to his third attorney who represented him through the plea and sentencing process.

- 3 -

trial counsel insisted that he plead guilty to avoid a life sentence and assured him the matter could be reopened on appeal. He said that trial counsel did not "provide a full and sincere effort in [his] defense" and that he had not been provided with his discovery. *Id.* at 7.

The PCRA court appointed counsel on September 15, 2020, who did not file an amended petition. Harrison filed a *pro se* amended petition on May 3, 2021, alleging that because of trial counsel's ineffectiveness, his guilty plea was not knowingly, voluntarily and intelligently entered.[5] He contended that trial counsel did not provide him with his discovery so he did not have enough information to enter a plea. He said that trial counsel falsely told him that he would receive a life sentence if convicted at trial. Finally, he claimed that trial counsel and the prosecutor had "engaged in coercive and unconstitutional misconduct." Petitioner's Amended PCRA Petition, 5/3/21, at 2.

The PCRA court held an evidentiary hearing on June 4, 2021, at which Harrison and trial counsel testified. Harrison testified that he met with trial counsel three times at the jail prior to entering his plea and that counsel had

_____

[5] It is well-established that there is no right to hybrid representation and any *pro se* filings by a represented party are a legal nullity. ***See Commonwealth v. Willis***, 29 A.3d 393, 400 (Pa. Super. 2011). At the evidentiary hearing, counsel adopted and litigated the issues raised in the amended petition and the PCRA court subsequently ruled on the merits of those issues. A PCRA court may allow amendment of a petition at any time and amendment "shall be freely allowed to achieve substantial justice." Pa. R. Crim. P. 905(A). Because the PCRA court exercised its discretion to accept the amended petition as filed, we decline to find this issue waived.

always advised him to enter a plea. Trial counsel informed him that DNA evidence linked him to the crime, but he did not have that evidence re-tested. They also did not discuss the strength of the Commonwealth's witnesses.

Harrison testified that trial counsel did not know of his mental illnesses and medications and had never discussed filing a notice of mental infirmity as part of his defense. He had been treated for post-traumatic stress disorder, bipolar disorder, schizophrenia and attention deficit hyperactivity disorder and had been abused in the past. Trial counsel did not request a psychiatric evaluation or his prior psychiatric records in preparation of his defense.

Harrison also testified that an investigator had been appointed for the case but he had never been contacted by the investigator.[6] He did not know if the investigator took any action on the case and trial counsel did not discuss the investigation with Harrison. He believed that video footage should have been recovered from the scene of the crime. He also claimed that the investigator did not investigate the victim's physical injuries, which Harrison believed did not match her description of the crime or her credibility and alleged mental illness. He testified that when he asked trial counsel about the investigation, he only reiterated that the Commonwealth had recovered

---

[6] Harrison's second appointed counsel filed a motion to appoint an investigator prior to withdrawing. The trial court granted the motion and assigned an investigator from the Office of the Public Defender to the case.

Harrison's DNA from the victim. Trial counsel did not review the discovery in the case with him despite multiple requests.

Even though he testified that he understood his plea and sentencing rights at the hearing, Harrison said he pled guilty only because trial counsel had promised to continue the investigation through a direct appeal. He believed that this investigation would lead to a new trial or dismissal of the charges. He testified that trial counsel told him he would have 30 days to rescind the plea, and that he only entered the plea because he believed there would be an additional investigation thereafter. However, trial counsel did not file the appeal or contact him at all after the hearing.

On cross-examination, Harrison testified that he still believed there had been a monetary exchange between his attorney and the prosecutor, but he accepted PCRA counsel's advice not to pursue that claim. He said that in addition to meeting with trial counsel at the jail, he spoke to him briefly at four or five court dates. He said that he never reviewed the discovery with trial counsel but had seen some of the pictures taken of the victim when he met with his prior appointed counsel.

He agreed that he had watched a video explaining his plea and sentencing rights before his hearing, and that he had testified that he understood his plea and had discussed the matter with trial counsel. At that time, he said he was satisfied with trial counsel's services and had not been promised anything outside of the terms of the plea that had been placed on

the record. However, he still believed trial counsel would be filing an appeal and continuing the investigation. He said that trial counsel told him he would receive a life sentence if he did not plead guilty.

The PCRA court then questioned Harrison regarding his colloquy. Harrison affirmed that he understood the appeal rights that had been explained to him in the video, specifically, that he could appeal issues related to his sentence, the trial court's jurisdiction and whether his plea was voluntary, knowing and intelligent. On redirect examination, Harrison testified that he spoke with trial counsel after viewing the video. He believed trial counsel's advice was correct as to the specific circumstances of his case even though it differed from what was said in the video.

On recross examination, Harrison admitted that due to the conflicting information in the video and from counsel, he was not certain of what his rights were when he entered the plea but he chose to credit trial counsel's advice. He said that he testified truthfully at the time that he understood everything that had been explained in the video, but that trial counsel's advice was more detailed and specific to his case.

Next, the Commonwealth called trial counsel as a witness. He testified that he had been practicing law for over nine years and that approximately 55 to 60 percent of his practice was criminal. He had represented between 750 and 900 criminal defendants and had tried one case to a jury. He was

appointed to Harrison's case in July 2019 and represented him through his plea and sentencing in December 2019.

Trial counsel testified that he received the discovery packet after his appointment but he could not recall whether he picked it up from the district attorney's office or from the jail. He said that a copy of the discovery was kept at the jail and Harrison would have been able to review it through his counselor. Prior counsel had told him that Harrison had already reviewed the discovery. He said that packet included the criminal complaint, photos and police reports, but he received the DNA report later. He said that he does not provide copies of discovery to clients in jail, which was common practice for defense attorneys in the county.

Trial counsel testified that he met with Harrison three or four times at the jail and five to seven times at various court dates. He said that he reviewed all the discovery with Harrison, including photos, police reports and the DNA report. Harrison had never told him that he did not see the discovery materials. Trial counsel believed the negotiated plea was in Harrison's best interests based on the evidence against him and the severity of the charges. He said that if Harrison had been convicted and sentenced consecutively, he would have received an effective life sentence.

Trial counsel said that he believed Harrison understood the terms and consequences of the plea. He discussed mental health with Harrison during one of their meetings at the jail, but he did not think there were any issues

that would require a motion or further examination. He said Harrison always appeared lucid and forthright. He explained various issues that could be appealed if they proceeded to trial, but did not discuss any appeal that would follow a plea. He could not recall whether Harrison contacted him about filing an appeal after the plea and sentencing hearing.

On cross-examination, trial counsel testified that he did not conduct any independent investigation other than reviewing the evidence in discovery. He knew that an investigator had been appointed and briefly spoke to prior counsel about the investigation. She told him that the investigator had not found anything of interest. He did not recall receiving a report from the investigator or whether he asked about the scope of the investigation.

On redirect, trial counsel testified that if Harrison had asked him to file an appeal, he was not certain that he would have complied. He said that the plea was appropriate for the case and any appeal would have been frivolous. He did not recall Harrison ever requesting an appeal and never told Harrison he would file an appeal following the plea.

Harrison testified once again on rebuttal. He said that by the time he contacted his counselor to see his discovery at the jail, his attorney had picked it up. He did not know the discovery had been there until after his attorney had retrieved it, so he never reviewed it on his own. He said that he would not have been permitted to see the photos that were kept on CD. Harrison testified that trial counsel reviewed the DNA report with him on one occasion.

He did not have any in-depth conversations with trial counsel regarding the facts or legal issues in the case. He testified that he sent trial counsel a letter requesting an appeal within 30 days of entering his plea.

On cross-examination, he said he did not have a copy of this letter or any of the other letters he had sent trial counsel, but he did send some letters to the Clerk of Courts to be included in his file. He said that in all of their meetings, trial counsel merely urged him to plead guilty. He admitted he had discussed mental health with trial counsel and said at that time he told counsel about the victim's alleged mental health problems.

After receiving argument, the PCRA court made findings of fact on the record. It found trial counsel to be entirely credible. It concluded that Harrison was not credible in light of his statements during his guilty plea colloquy and did not believe the testimony that trial counsel told him to plead guilty and continue the investigation on appeal. It did not believe that Harrison's mental health diagnoses interfered with his capacity to plead guilty. It credited trial counsel's testimony that he had spoken with prior counsel about the investigator, and further concluded that Harrison had not proven that any additional investigation would have changed the outcome of the case. Accordingly, it denied the petition. Harrison timely appealed and he and the trial court have complied with Pa. R.A.P. 1925.

**II.**

On appeal, Harrison argues that trial counsel was ineffective in preparing his defense and failing to properly investigate the facts of the case.[7] He argues that his guilty plea was induced by trial counsel's ineffective representation and as a result was unknowing and involuntarily entered.

"[T]o succeed on an ineffectiveness claim, a petitioner must demonstrate: that the underlying claim is of arguable merit; counsel had no reasonable basis for the act or omission in question; and he suffered prejudice as a result[.]" *Commonwealth v. Laird*, 119 A.3d 972, 978 (Pa. 2015) (citations omitted). In this context, prejudice requires proof of a reasonable possibility that but for counsel's ineffectiveness, the outcome of the proceedings would have been different. *Id.*

"[F]ailure to prove any of these prongs is sufficient to warrant dismissal of the claim without discussion of the other two." *Commonwealth v. Robinson*, 877 A.2d 433, 439 (Pa. 2005) (citation omitted). Counsel cannot be ineffective for failing to pursue a meritless claim. *Commonwealth v.*

---

[7] "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." *Commonwealth v. Weimer*, 167 A.3d 78, 81 (Pa. Super. 2017). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Id.* (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Roney*, 79 A.3d 595, 603 (Pa. 2013).

***Tarver***, 420 A.2d 438, 438 (Pa. 1980). Finally, we presume that counsel has rendered effective assistance. ***See Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015).

**A.**

First, Harrison argues that trial counsel did not investigate the facts of his case, provide him with discovery, discuss any trial strategy or defenses, or consider his mental health diagnoses as exculpatory or mitigating evidence. He contends that trial counsel was focused on convincing him to plead guilty and did not attempt to locate additional witnesses, seek additional testing of the DNA evidence or investigate the mental health and credibility of the victim.

The PCRA court concluded, and the Commonwealth agrees, that Harrison waived his failure to investigate and mental health claims because he did not raise them in his initial or amended PCRA petition. Harrison's initial petition alleged that trial counsel and the prosecutor engaged in a financial transaction before his guilty plea, that trial counsel had falsely advised him that he would receive a life sentence if he proceeded to trial, and that counsel promised to file an appeal to "re-open" the case. Post-Conviction Relief Act Petition, 9/11/20, at 5. He also claimed more generally that he was entitled to relief based on "the wait [sic] of the evidence and ineffective assistance of counsel to provide a full and sincere effort in my defense." ***Id.*** at 7 (unnecessary capitalization omitted).

Assuming this general allegation was sufficient to preserve Harrison's claims related to failure to investigate and mental health, we conclude that he is not entitled to relief. We agree with the PCRA court that Harrison has not established or even argued that he was prejudiced by a lack of investigation or failure to pursue his mental health diagnoses as exculpatory or mitigating evidence. *See Laird*, *supra*. Harrison repeatedly asserted at the hearing that trial counsel failed to investigate the case, but he presented no evidence that counsel should have uncovered that would have changed the outcome. He did not identify any witnesses who would contradict the victim's version of events or support his own. While he complains that trial counsel did not speak to the appointed investigator, he did not call the investigator as a witness or offer any other evidence to suggest he had uncovered relevant information or would have done so with further direction from trial counsel. His claims that further investigation into the victim's background or additional DNA testing would have yielded favorable evidence are wholly speculative.

Similarly, Harrison identified his mental health diagnoses at the hearing but did not explain how those diagnoses could have successfully been used as exculpatory or mitigating evidence. He agreed that he had spoken about mental health with trial counsel during one of their meetings at the jail, and he did not contradict counsel's testimony that he was always lucid, transparent and forthright. He did not offer any documentary evidence of his past mental health treatment or any testimony from past healthcare providers. Because

he has not established that prejudice resulted from trial counsel's failure to pursue these avenues of defense, he is not entitled to relief.

In rejecting Harrison's claim that trial counsel never provided him with discovery, the PCRA court credited trial counsel's testimony regarding his conversations with Harrison. Trial counsel testified that it is not his practice to provide clients with their own copy of discovery materials, but that he brought the discovery with him to each meeting and thoroughly reviewed it with Harrison before he entered his plea. While Harrison disputes trial counsel's version of events, we are bound by the PCRA court's credibility determinations. *Roney*, *supra*. Accordingly, this claim is meritless.

**B.**

Next, we consider whether trial counsel's ineffectiveness caused Harrison to enter an unknowing and involuntary plea. Harrison contends that he only entered his plea because trial counsel assured him that he would continue the investigation through a direct appeal. He reiterates his arguments that trial counsel failed to investigate the case and prepare for trial and argues that this deficient performance compelled him to enter an unknowing and involuntary plea.[8]

"Under the PCRA, allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness

---

[8] As we have already rejected these claims of trial counsel's ineffectiveness, we do not address them further here.

caused the petitioner to enter an involuntary or unknowing plea." *Commonwealth v. Brown*, 235 A.3d 387, 391 (Pa. Super. 2020) (cleaned up; citation omitted). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Commonwealth v. Moser*, 921 A.2d 526, 531 (Pa. Super. 2007) (internal quotations and citation omitted).

> Once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established. A defendant is bound by the statements he makes during his plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when he pled.

*Commonwealth v. McCauley*, 797 A.2d 920, 922 (Pa. Super. 2001) (citations omitted). To determine whether a plea was knowingly, voluntarily and intelligently entered, the court must inquire into six areas. *See* Pa.R.Crim.P. 590, *cmt* (plea court must question the defendant regarding whether he understands the nature of the charges, the factual basis for the plea, his right to a jury trial, the presumption of innocence, the permissible sentencing ranges, and that the court has the right to reject the agreement).

As noted *supra*, the PCRA court regarded Harrison's testimony that trial counsel promised to continue the investigation on appeal as "completely incredible." Notes of Testimony, 6/4/21, at 73. It also reviewed the guilty

plea colloquy, including the post-sentence and appellate rights explained to Harrison in the video, and concluded that he had been fully informed of the effect and consequences of his plea. *Id.* at 72-74. It noted that Harrison had not mentioned an appeal or further investigation during the colloquy when he was asked if any additional promises induced his plea. He testified that he was satisfied with trial counsel's performance and that his mental illnesses and medications did not impair his ability to understand the proceedings. Harrison is bound by these statements he made under oath during his colloquy. *McCauley*, *supra*. Accordingly, the record belies Harrison's assertion that he entered his plea based on trial counsel's promise to continue investigating the case through direct appeal and the PCRA court did not err in denying relief on this claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2022

- 16 -